**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BENJAMIN ELLIS FREEDLAND,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-00081** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **BETH MATTINGLY, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

On January 16, 2020, <u>pro se</u> Plaintiff Benjamin Ellis Freedland ("Plaintiff"), who is currently incarcerated at the Federal Correctional Institution in Marianna, Florida ("FCI Marianna"), initiated the above-captioned action by filing a complaint pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), against Defendants Beth Mattingly ("Mattingly"), Christopher Angelini ("Angelini"),[1] and Wiley Jenkins ("Jenkins") concerning events that occurred while Plaintiff was incarcerated at the Federal Correctional Institution Allenwood in White Deer, Pennsylvania ("FCI Allenwood"). (Doc. No. 1.)  Presently before the Court are Defendants Mattingly and Jenkins' motion to dismiss (Doc. No. 77) Plaintiff's complaint, as well as Plaintiff's motion to amend his complaint (Doc. No. 105) and motion seeking emergency preliminary injunctive relief (Doc. No. 124).  The Court will also screen Plaintiff's claims against Defendant Angelini pursuant to the Prison Litigation Reform Act ("PLRA").[2]

---

[1] Defendant Angelini has not yet appeared in the above-captioned case, and a review of the docket reflects that the summons issued to him on December 10, 2020 (Doc. No. 104) has not been returned to the Court as executed or unexecuted.

[2] <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

## I.     BACKGROUND

In his complaint, Plaintiff alleges that on August 1, 2017, he was admitted to FCI Allenwood's Protective Custody Unit ("PCU") in the Secured Housing Unit ("SHU") "on 'administrative segregation' status due to an incident report alleging prohibited act 306 'refusing to program.'"  (Doc. No. 1-1 ¶ 7.)  "Correctional officers were assigned to supervise him in a one-on-one setting."  (Id.)  Plaintiff remained in this unit until November 8, 2017, when he was transferred to general population.  (Id.)

On October 25, 2017, Defendant Mattingly was the officer on duty in the PCU SHU.  (Id. ¶ 10.)  Plaintiff heard her make a private phone call, during which she spoke loud enough for Plaintiff to hear the entire conversation.  (Id.)  Plaintiff avers that the call "included obscene language of a sexual nature and depicted obscene details about [Defendant Mattingly's] sexual endeavors."  (Id.)  Plaintiff asked Defendant Mattingly to "stop subjecting him to such sexually charged language."  (Id. ¶ 11.)  He avers that she "responded in outrage to his request to, at the very minimum, close the office door during any future conversations, while peppering him with disparaging remarks and obscenities which prompted him to report her to the first officer he could."  (Id.)  That same day, Plaintiff made a report of sexual harassment to a lieutenant making scheduled rounds.  (Id. ¶ 14.)  That lieutenant, pursuant to protocol set forth in the Prison Rape Elimination Act ("PREA"), reported the incident to the operations lieutenant.  (Id.)  The operations lieutenant referred the issue to psychology services, which sent Dr. Stacie Stoner to assess Plaintiff.  (Id. ¶¶ 15-16.)  At the end of the encounter, Dr. Stoner wrote that the "PREA Coordinator and SIA felt that [his] allegation 'wasn't a PREA issue' but it would be 'reviewed as appropriate.'"  (Id. ¶ 16.)  Later that day, Defendant Jenkins "made the determination not to proceed with a full activation of PREA response protocol."  (Id. ¶ 17.)

On or after October 16, 2017 but before November 7, 2017, Plaintiff filed a separate sexual harassment claim with the Office of Inspector General, Investigations Division.  (Id. ¶ 22.)  Plaintiff alleged that "he was a victim of sexual harassment and feared retaliation by Defendant Mattingly or one of her co-workers."  (Id.)  Plaintiff avers that despite his allegations, Defendant Angelini allowed Defendant Mattingly to return to her post in the PCU.  (Id. ¶ 23.) He maintains that he was "subjected to further sexual victimization."  (Id.)  Plaintiff again reached out "to the third party sexual reporting link" to address his concerns.  (Id. ¶ 26.)

Plaintiff alleges that on November 7, 2017, his "fear of retaliation [was] brought to fruition."  (Id. ¶ 27.)  He avers that Defendant Mattingly issued incident report #3053709, charging him with three prohibited acts in retaliation for his sexual harassment claims.  (Id.) Plaintiff avers that on that same day, Defendant Mattingly, while standing in the officer's station in the PCU SHU, got Plaintiff's attention and had him approach his cell window.  (Id. ¶ 28.)  He maintains that Defendant Mattingly "had already dropped her uniformed pants to her ankles bent over with her back turned exposing her buttocks and panties while proclaiming more obscene language."  (Id.)  Plaintiff made another PREA report to the first available staff member.  (Id. ¶ 31.)

On November 8, 2017, Plaintiff was transferred to general population and seen by Dr. Stoner.  (Id. ¶¶ 32-33.)  On November 29, 2017, Disciplinary Hearing Officer ("DHO") Bittenbender found Plaintiff guilty of the events charged in incident report #3053709.  (Id. ¶ 34.) Plaintiff was also interviewed by SIA, which found that, "according to video surveillance, there was, in fact, a 15-20 minute window during Defendant Mattingly's shift on 11/7/2017 where she could have carried out the sexual act outside the view of cameras."  (Id.¶ 35.)  SIA, however,

found Plaintiff's claim to be unsubstantiated.  (Id.)  Plaintiff was subsequently transferred from FCI Allenwood, began counseling, and exhausted his administrative remedies.  (Id. ¶¶ 36-47.)

Based on the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights.  (Id. ¶¶ 47-51.)  Plaintiff requests declaratory relief, compensatory and punitive damages, attorney fees and costs, and recoupment of the $400.00 filing fee.  (Id. at 14.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

Defendants Mattingly and Jenkins move for dismissal of Plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the Court lacks subject-matter jurisdiction because Plaintiff's claims are not cognizable under Bivens.  (Doc. No. 89 at 13.)  Defendants' motion is a facial challenge because it considers Plaintiff's claims on their face and asserts that they are insufficient to invoke the subject matter jurisdiction of the court.  See Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).  "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party."  Id.  Therefore, a facial attack "contests the sufficiency of the pleadings."  See id. (quoting In re Schering Plough Corp., 678 F.3d 235, 243 (3d Cir. 2012)).  The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists.  See Lightfoot v. United States, 564 F.3d 625, 627 (3d Cir. 2009).

### B.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to bring a motion challenging the court's right to exercise personal jurisdiction over it.  See Fed. R. Civ. P. 12(b)(2).  Once "the defendant raises the question of personal jurisdiction, the plaintiff bears the

4

burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." See Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). At the pleading stage, a plaintiff is required only to establish a prima facie case of personal jurisdiction over the defendant, and the court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); Carteret Sav. Bank, 954 F.2d at 146. Further, a court may consider the parties' affidavits and other evidence when making determinations regarding personal jurisdiction. See Metcalfe, 566 F.3d at 330; Connell v. CIMC Intermodal Equip., No. 1:16-cv-714, 2016 WL 7034407, at *1 (M.D. Pa. Dec. 2, 2016).

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Carteret Sav. Bank, 954 F.2d at 144-45 (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute permits the Court to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Therefore, in its exercise of personal jurisdiction, this Court is constrained only by the Due Process Clause of the United States Constitution, which requires that a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Requiring "minimum contacts" between the defendant and the forum state gives "fair warning" to a defendant that he or she may be called to defend a lawsuit in that state. See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (quotation omitted).

Two types of personal jurisdiction comport with these notions of due process: specific and general jurisdiction.  See Daimler AG v. Bauman, 134 S. Ct. 746 (2014).  Specific jurisdiction encompasses cases "in which the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'"  See id. at 754 (citations omitted).  A court's determination as to whether the exercise of specific jurisdiction is proper entails a three-part inquiry:  (1) "the defendant must have 'purposefully directed [its] activities' at the forum";  (2) "the litigation must 'arise out of or relate to' at least one of those activities";  and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with 'fair play and substantial justice.'"  See O'Connor, 496 F.3d at 317 (alterations in original) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985);  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984);  Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)).  General jurisdiction, however, may be exercised by a court when a non-resident's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  See id. (citations omitted).

**C.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### D.  Screening and Dismissal of Prisoner Complaints

Although Plaintiff paid the filing fee in full, the Court has the authority to screen his complaint pursuant to 28 U.S.C. § 1915A.  See Shane v. Fauver, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding in forma pauperis).  Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint.  See 28 U.S.C. § 1915A(b)(1).  A complaint is frivolous if it lacks an arguable basis either in law or fact.  See Mitchell v. Horn, 381 F.3d 523, 530 (3d Cir. 2003) (citing Neitzke v. Williams, 490 U.S. 319, 327-28 (1989)).  When deciding whether a complaint fails to state a claim on which relief may be granted, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)")

### E.   Bivens Standard

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards applicable to a § 1983 civil rights action.  See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992).  To state a claim under Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law.  See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

### F.   Preliminary Injunctive Relief

Preliminary injunctive relief is extraordinary in nature and lies within the discretion of the trial judge.  See Orson, Inc. v. Miramax Film Corp., 836 F. Spp. 309, 311 (E.D. Pa. 1993) (citing Skehan v. Bd. of Trs. of Bloomsburg State Coll., 353 F. Supp. 542 (M.D. Pa. 1973)).  In determining whether to grant a motion seeking preliminary injunctive relief, courts within the Third Circuit consider the following four factors: (1) the likelihood that the applicant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the conduct complained of; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest.  See S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)).  To show "irreparable injury" a plaintiff must demonstrate actual and immediate injury rather than a possibility of future harm.  See Continental Grp., Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3d Cir. 1980).  It is the moving party that bears the burden of demonstrating these factors.  See

Dorfman v. Moorhous, No. 93-cv-6120, 1993 WL 483166, at *1 (E.D. Pa. Nov. 24, 1993). "The relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. 1985). Furthermore, "there must be a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." See Ball v. Famiglio, 396 F. App'x 836, 837 (3d Cir. 2010) (internal quotation marks omitted) (quoting Little v. Jones, 607 F.3d 1245, 1251 (10th Cir. 2010)).

Moreover, "[t]he 'requisite feared injury or harm must be irreparable – not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" See ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (quoting Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). "The key word in this consideration is irreparable. . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

## III.    DISCUSSION

### A.    Plaintiff's Motion Seeking Emergency Preliminary Injunctive Relief

In his motion seeking emergency preliminary injunctive relief, Plaintiff avers that he has been issued disciplinary charges for, inter alia, possession of narcotics, and that this charge stems from a positive test for amphetamines conducted on a document pertaining to this matter that

was mailed by either the Court or the United States Attorney's Office.  (Doc. No. 124.)  Plaintiff

maintains that he is innocent of the disciplinary charge and seeks further testing of the document

in question.  (Id.)  Plaintiff requests that the Court order the Department of Justice to coordinate

an independent test of the document.  (Id.)

As an initial matter, the relief Plaintiff requests is completely unrelated to the allegations

set forth in his complaint against Defendants Mattingly, Angelini, and Jenkins.  See Ball, 396 F.

App'x at 838.  Moreover, as the Court has previously informed Plaintiff, this Court has no

authority to recommend or initiate the investigation or relief Plaintiff requests.  See, e.g.,

Millhouse v. Levi, 267 F. App'x 140, 141 (3d Cir. 2008) (affirming the district court's denial of

the inmate-plaintiff's motion requesting that the court investigate a federal detention center);

Collado v. Kelsey, No. 20-479 (RMB-KMW), 2020 WL 3287962, at *4 (D.N.J. June 18, 2020)

(concluding that the court could not investigate the inmate-petitioner's disciplinary charge).

Plaintiff's motion seeking emergency preliminary injunctive relief (Doc. No. 124) will,

therefore, be denied.

### B.    Plaintiff's Complaint

Defendants Mattingly and Jenkins assert that dismissal of Plaintiff's complaint is

appropriate because: (1) the Court lacks personal jurisdiction over Defendant Jenkins; (2)

Plaintiff's complaint fails to allege a physical injury as required by the PLRA; (3) Plaintiff's

First and Eighth Amendment Bivens claims present new contexts not previously recognized by

the Supreme Court; and (4) they are entitled to qualified immunity.  (Doc. No. 89 at 12-13.)  The

Court considers each argument below.

### 1.      Personal Jurisdiction over Defendant Jenkins

Defendant Jenkins maintains that he should be dismissed from the above-captioned action because the Court lacks personal jurisdiction over him.  (Doc. No. 89 at 15.)  He asserts that there is "no indication that [he] resides in the Middle District of Pennsylvania or that he maintains a place of business in the Commonwealth of Pennsylvania which would subject him to jurisdiction within the state."  (Id. at 17.)  He avers further that Plaintiff "has not offered any evidence to meet his burden for the out-of-state defendant."  (Id.)

Plaintiff initially named Defendant Jenkins as Defendant First Name Unknown, Last Name Unknown ("FNU LNU").  In his complaint, Plaintiff alleges that, at the time of the relevant events, Defendant FNU LNU was the PREA Compliance Manager at FCI Allenwood. (Doc. No. 1-1 ¶¶ 5, 50.)  Plaintiff later identified Defendant FNU LNU as Defendant Jenkins and indicated that Defendant Jenkins is currently the Warden at FCI Dublin in California.  (Doc. No. 26.)  As noted supra, at the pleading stage, a plaintiff is required only to establish a prima facie case of personal jurisdiction over the defendant, and the court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor.  See Metcalfe, 566 F.3d at 330 (3d Cir. 2009); Carteret Sav. Bank, 954 F.2d at 146.  In the instant case, Plaintiff has specifically averred that Defendant Jenkins was employed at FCI Allenwood at the time of the incidents alleged in the complaint.  The Court, therefore, concludes that Plaintiff has sufficiently pled that specific personal jurisdiction exists over Defendant Jenkins because Defendant Jenkins "'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities.'"  See Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001); cf. Milhouse v. Sage, No. 1:14-cv-1055, 2019 WL 1453057, at *7-8 (M.D. Pa. Mar. 31, 2019) (concluding that personal jurisdiction did not exist over Bureau of Prison ("BOP") employees at

12

USP Hazelton in West Virginia because, <u>inter alia</u>, they "did not reside, work or have business dealings in Pennsylvania at the time of the incidents alleged in the amended complaint"); <u>Perry v. Markman Capital Mgmt., Inc.</u>, No. 02-744, 2002 WL 31248038, at *4 n.7 (E.D. Pa. Oct. 4, 2002) (concluding that "personal jurisdiction is determined by a corporation's status at the time the relevant event(s) occurred"). The Court, therefore, will not grant the motion to dismiss Defendant Jenkins on the basis that the Court lacks personal jurisdiction over him.

### 2.      No Allegations of Physical Injury

Defendants Mattingly and Jenkins next assert that Plaintiff's complaint should be dismissed because he fails to allege a physical injury. (Doc. No. 89 at 18-19.) The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." <u>See</u> 42 U.S.C. § 1997e(e). The Third Circuit requires "a less-than-significant-but-more-than-<u>de minimis</u> physical injury as a predicate to allegations of emotional injury." <u>See</u> <u>Mitchell</u>, 318 F.3d at 536. Moreover, section 2246 of Title 18 defines a sexual act as follows:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
> (C) the penetration, however, slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

<u>See</u> 18 U.S.C. § 2246(2).

The Court agrees with Defendants Mattingly and Jenkins that Plaintiff's complaint fails to allege any physical injury.  Plaintiff's claims for compensatory damages, are, therefore, precluded by § 1997e(e) and are subject to dismissal.  See Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2000) (concluding the same regarding the inmate-plaintiff's claims regarding alleged violations of his First Amendment right to free exercise of religion).  However, § 1997e(e) does not bar all of Plaintiff's claims for damages.  Rather, "certain absolute constitutional rights may be vindicated by an award of nominal damages in the absence of any showing of injury warranting compensatory damages."  See Allah, 226 F.3d at 251.  While Plaintiff does not expressly seek nominal damages, the Third Circuit has held that "it is not necessary to allege nominal damages."  See Basista v. Weir, 340 F.2d 74, 87 (3d Cir. 1965).  The Court, therefore, liberally construes Plaintiff's complaint to request nominal damages.  See Haines, 404 U.S. at 520.  Moreover, "[p]unitive damages may also be awarded based solely on a constitutional violation, provided the proper showing is made."  See Allah, 226 F.3d at 252.  As the Third Circuit has noted, "[n]either claims seeking nominal damages to vindicate constitutional rights nor claims seeking punitive damages to deter or punish egregious violations of constitutional rights are claims 'for mental or emotional injury.'"  See id.  Thus, while Plaintiff's claims for compensatory damages are barred by § 1997e(e), his claims for nominal and punitive damages are not.

### 3.    Plaintiff's Bivens Claims Present New Contexts

In 1971, the Supreme Court concluded that, even absent statutory authorization, it would enforce a damages remedy allowing individuals to be compensated after experiencing violations of the prohibition against unreasonable searches and seizures contained in the Fourth Amendment.  See Bivens, 403 U.S. at 397.  Subsequently, the Court extended the Bivens cause

of action in two cases involving constitutional violations.  First, in <u>Davis v. Passman</u>, 442 U.S. 228, 249-49 (1979), the Court concluded that the Fifth Amendment's Due Process Clause provided a damages remedy to an administrative assistant claiming that a Congressman had discriminated against her on the basis of gender.  Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment provided a prisoner a cause of action for damages against prison officials who failed to treat his asthma.  <u>See</u> <u>Carlson v. Green</u>, 446 U.S. 14, 19 (1980).  "These three cases—<u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  <u>See</u> <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1855 (2017).  Over the years that followed, the Supreme Court has "consistently refused to expand <u>Bivens</u> actions beyond these three specific contexts."  <u>See</u> <u>Mack v. Yost</u>, 968 F.3d 311, 318 (3d Cir. 2020).

In <u>Ziglar</u>, the Supreme Court noted that "expanding the <u>Bivens</u> remedy is now a 'disfavored' judicial activity."  <u>See</u> <u>Ziglar</u>, 137 S. Ct. at 1857.  As the Court stated in <u>Ziglar</u>:

> If the case is different in a meaningful way from previous <u>Bivens</u> cases decided by this Court, then the context is new.  Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive.  A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

<u>See</u> <u>id.</u> at 1859-60.  If the case presents a new context, a court must then consider whether any alternative remedies exist.  <u>See</u> <u>id.</u>  Even absent alternative remedies, a court must also consider whether special factors counsel against extending the <u>Bivens</u> remedy.  <u>See</u> <u>id.</u>

a.      **First Amendment Retaliation Claims**

The Supreme Court has "never held that <u>Bivens</u> extends to First Amendment claims."

<u>See</u> <u>Reichle v. Howards</u>, 566 U.S. 658, 663 n.4 (2012).  Moreover, the Third Circuit has

repeatedly held that <u>Bivens</u> may not be extended to First Amendment retaliation claims in the

prison context.  <u>See</u>, <u>e.g.</u>, <u>Mack</u>, 968 F.3d at 319 (declining to extend <u>Bivens</u> to a First

Amendment retaliation claim in the prison workplace assignment context); <u>Bistrian v. Levi</u>, 912

F.3d 79, 96 (3d Cir. 2018) ("[T]he retaliation claim is not a recognized <u>Bivens</u> remedy.");

<u>Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel</u>, 723 F. App'x 137, 139-

40 (3d Cir. 2018) (affirming the dismissal of a First Amendment retaliation claim brought by a

federal prisoner against correctional staff).  Likewise, this Court has repeatedly ruled that there is

no <u>Bivens</u> remedy for First Amendment retaliation claims in the prison context.  <u>See</u> <u>Stone Bey</u>

<u>v. U.S. Dep't of Justice</u>, No. 1:21-cv-113, 2021 WL 632735, at *5 (M.D. Pa. Feb. 18, 2021);

<u>Bush v. Griffin</u>, No. 1:19-cv-1521, 2020 WL 5801408, at *3 (M.D. Pa. Sept. 29, 2020)

(collecting cases).  In light of this precedent, Plaintiff's retaliation claim presents a new <u>Bivens</u>

context.

Because Plaintiff's claim presents a new context, the Court must determine whether there

are any special factors that counsel hesitation in extending <u>Bivens</u>.  <u>See</u> <u>Mack</u>, 968 F.3d at 317.

There may be many special factors, but two are "'particularly weighty': the availability of an

alternative remedial structure and separation-of-powers concerns."  <u>See</u> <u>id.</u> at 320 (quoting

<u>Bistrian</u>, 912 F.3d at 90).  The Court agrees with other courts that have concluded that federal

inmates have alternative remedies for their retaliation claims in the form of the BOP's

administrative remedies program.  <u>See</u>, <u>e.g.</u>, <u>Aigbekaen v. Trump</u>, No. 20-8608 (NLH)(KMW),

2021 WL 147079, at *2 (D.N.J. Jan. 15, 2021); <u>Landis v. Ebbert</u>, No. 1:19-cv-470, 2020 WL

16

5819766, at *5 (M.D. Pa. Sept. 30, 2020); Bush, 2020 WL 5801408, at *3.  In his brief in

opposition, Plaintiff indicates that the allegedly retaliatory incident report was dismissed in May

of 2018.  (Doc. No. 116 at 20.)  Plaintiff, therefore, was successful in seeking an administrative

remedy, and even if such remedy had not been successful, it does not mean that an alternative

remedy was unavailable to him.  See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 69 (2001) ("So

long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers

foreclosed judicial imposition of a new substantive liability.").  Moreover, in declining to extend

Bivens to First Amendment retaliation claims, the Third Circuit has noted courts have "afforded

a level of deference to the decision making of prison officials," recognizing "day-to-day

administrative decisions have been committed solely to the province of the BOP."  See Mack,

968 F.3d at 323; see also Railey v. Ebbert, 407 F. Supp. 3d 510, 523 (M.D. Pa. 2019) (noting that

"the judicial restraint exercised in cases implicating the administrative of prisons is another

factor weighing against extension of the Bivens remedy").  In this matter, the issuance of

incident reports and subsequent disciplinary proceedings are matters that have been delegated to

the Bureau of Prisons by Congress.  See 18 U.S.C. §§ 4001(b)(2), 4042(a)(1).

      In sum, the Court finds that Plaintiff's First Amendment retaliation claim presents a new

context to which Bivens has not previously been extended.  Moreover, special factors counsel

against extending Bivens to that new context.  The Court, therefore, declines to extend Bivens to

Plaintiff's retaliation claim, and his claim will be dismissed.

### b.      Eighth Amendment Claims

      In his complaint, Plaintiff avers that Defendant Mattingly violated his Eighth Amendment

rights by sexually harassing and abusing him, "causing mental anguish [and] emotional injury."

(Doc. No. 1-1 ¶ 49.)  He maintains that Defendant Jenkins, as the PREA Compliance Manager,

violated his Eighth Amendment rights by failing to "properly enforce agency protection duties separating Plaintiff from Defendant Mattingly and allowing for her to continually sexually victimize Plaintiff and eventually retaliate against him." (Id. ¶ 50.)  Defendants Mattingly and Jenkins argue that Plaintiff's Eighth Amendment claims present new contexts and, therefore, are not cognizable under Bivens.  (Doc. No. 89 at 23-24.)

This Court agrees with the District of New Jersey's conclusion that Plaintiff's Eighth Amendment claims against Defendant Mattingly and Jenkins present new Bivens contexts subject to the analysis set forth in Ziglar.  See Belt v. Fed. Bureau of Prisons, 336 F. Supp. 3d 428, 440 (D.N.J. 2018) (noting that the inmate-plaintiff's "Eighth Amendment sexual assault, failure to protect, failure to intervene, and failure to investigate claims" presented "new Bivens contexts"); see also Shorter v. United States, No. 19-16627 (RMB-KMW), 2020 WL 4188455, at *4 (D.N.J. July 21, 2020); Bower v. Cannon, No. , 2018 WL 6441034, at *2 (D.N.J. Dec. 7, 2018) (citing Belt to conclude the same).  Because Plaintiff's claim presents a new context, the Court must determine whether there are any special factors that counsel hesitation in extending Bivens.  See Mack, 968 F.3d at 317.  Defendants assert that the following special factors counsel against extending the Bivens remedy: (1) Congress enacted the PREA without creating a damages remedy; (2) the PLRA demonstrates Congress's intent to limit prisoner litigation; (3) alternative processes exist to vindicate Plaintiff's rights; (4) systemwide costs and the burden created upon the government; and (5) "the threat of an internal investigation through BOP's Office of Internal Affairs or DOJ's Office of the Inspector General also serve to deter any misconduct."  (Doc. No. 89 at 26-33.)

The Court agrees with Defendants that these special factors counsel against extending the Bivens remedy to encompass Plaintiff's Eighth Amendment claims.  To the extent that Plaintiff

avers that Defendant Jenkins failed to comply with PREA regulations, he "had the option, while housed at [FCI Allenwood], of seeking injunctive relief for compliance" with such regulations. See Shorter, 2020 WL 4188455, at *5.  Moreover, the Supreme Court has noted that "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation."  See Ziglar, 137 S. Ct. at 1865.  As the District of New Jersey has noted, "[i]t is significant that Congress, in passing comprehensive legislation aimed at a zero tolerance policy for prison rape, opted not to include a private right of action for damages under PREA."  See Shorter, 2020 WL 4188455, at *5.  Likewise, the BOP's administrative remedy process is an alternative remedial structure that exists to address the alleged wrongful conduct raised in Plaintiff's complaint.  See Bonds v. Long, No. 4:19-cv-967, 2019 WL 4141592, at *2 (N.D. Ohio Aug. 30, 2019) (concluding that extending the Bivens remedy to the inmate-plaintiff's sexual assault claim against a corrections officer was not warranted under Ziglar).  Furthermore, "by enacting PREA, Congress gave the power to regulate prison rape allegations to the [BOP] and other executive agencies."  See Shorter, 2020 WL 4188455, at *5.

In sum, the Court finds that Plaintiff's Eighth Amendment claims present new contexts to which Bivens has not previously been extended.  Moreover, special factors counsel against extending Bivens to those new contexts.  The Court, therefore, declines to extend Bivens to Plaintiff's Eighth Amendment claims against Defendants Mattingly and Jenkins, and his claims will be dismissed.

### 4.    Qualified Immunity

Alternatively, Defendants Mattingly and Jenkins assert that they are entitled to qualified immunity.  (Doc. No. 89 at 33-35.)  Although the Court has concluded that Plaintiff's claims for

relief are not cognizable under Bivens, the Court will, in an abundance of caution, address Defendants' alternate argument.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Id. Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at 741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" See District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in White v. Pauly, 137 S. Ct. 548 (2017), clarifies the Court's inquiry in this regard. In that case, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but

"existing precedent must have placed the statutory or constitutional question beyond debate."[3]
See id. at 551 (internal quotation marks omitted) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308
(2015)).  The Supreme Court reiterated that the clearly-established law "must be 'particularized'
to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and
circumstances is an "important indication" that a defendant's conduct at issue did not violate a
"clearly established" right.  See id. at 552 (quoting Anderson v. Creighton, 483 U.S. 635, 640
(1987)).

    In support of their qualified immunity argument, Defendants assert that Defendant
Mattingly's alleged verbal harassment is insufficient to establish an Eighth Amendment claim.
(Doc. No. 89 at 34-35.)  They also maintain that Defendant Jenkins's "failure to intervene in
conduct that arguably does not violate the law warrants the application of qualified immunity to
him as well."  (Id. at 35.)  Recently, the "Third Circuit, joining several other circuits, . . . held
that sexual abuse of prisoners by prison officials can violate the Eighth Amendment."  See Bey
v. New Jersey Dep't of Corr., No. 18-3693, 2018 WL 5784999, at *4-5 (D.N.J. Nov. 5, 2018)
(citing Ricks v. Shover, 891 F.3d 468 (3d Cir. 2018)).  However, this Court, prior to the incidents
Plaintiff raises in his complaint, recognized that several courts "have held that sexual harassment
in the absence of contact or touching does not establish excessive and unprovoked pain
infliction" to state a claim under the Eighth Amendment.  See Chambliss v. Jones, No. 3:14-cv-
2435, 2015 WL 328064, at *3 (M.D. Pa. Jan. 26, 2015) (collecting cases).  Thus, while
Defendant Mattingly's alleged behavior is certainly inappropriate, it does not rise to the level of
an Eighth Amendment violation.  See Dickson v. Bounce, No. 3:17-cv-520, 2018 WL 1138390,

---

[3] There may be the rare "obvious case," however, where "a body of case law" is not necessary.
See Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

at *4-5 (M.D. Pa. Feb. 26, 2018) (concluding the same regarding the inmate-plaintiff's claims based upon an "allegedly sexually charged comment"). Defendant Mattingly, therefore, is also entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims against her.[4]

Likewise, to the extent Plaintiff avers that Defendant Jenkins violated his Eighth Amendment rights by failing to "properly enforce agency protection duties" under the PREA, he cannot maintain such a claim. "While the PREA was intended to part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action." See Walsh v. N.J. Dep't of Corr., No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017). Thus, Plaintiff cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [BOP] PREA policy via [Bivens]." Bowens v. Employees of the Dep't of Corr., No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), aff'd sub nom. Bowens v. Wetzel, 674 F. App'x 133, 137 (3d Cir. 2017) (agreeing that a plaintiff "may not attempt to enforce statute or policies that do not themselves create a private right of action by bootstrapping such standards into a constitutional deliberate indifference claim"). Moreover, to the extent Plaintiff challenges the quality of Defendant Jenkins's investigation into his PREA complaint, he has no freestanding constitutional right to such an investigation. See Graw v. Fantasky, 68 F. App'x 378, 383 (3d Cir. 2003). Defendant Jenkins, therefore, is also entitled to qualified immunity with respect to Plaintiff's claims against him.

---

[4] Plaintiff also suggests that Defendant Mattingly violated his First Amendment rights by retaliating against him for filing his PREA complaints. It is clearly established that such action, if proven, is not lawful. See Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003) (citing Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981)). As discussed supra, however, Plaintiff's First Amendment retaliation claim is not cognizable under Bivens.

### C.    Claims Against Defendant Angelini

As noted supra, Defendant Angelini has not yet been served with Plaintiff's complaint. Nevertheless, "[a] § 1915A [screening] may be made at any time, before or after service of process and before or after an answer is filed." See Janowski v. Williams, No. 12-3144 (FLW), 2015 WL 4171727, at *2 n.1 (D.N.J. July 10, 2015) (quoting Loving v. Lea, No. 13-cv-158, 2013 WL 3293655, at *1 (M.D. Pa. June 28, 2013)).

In his complaint, Plaintiff avers that Defendant Angelini violated his Eighth Amendment rights by allowing Defendant Mattingly to return to her post in the PCU SHU, which allowed her to subject Plaintiff to further sexual harassment and retaliation.  (Doc. No. 1-1 ¶ 51.)  Plaintiff appears to suggest that Defendant Angelini failed to intervene to protect him from Defendant Mattingly's actions.  For the reasons discussed supra, the Court concludes that Plaintiff's Eighth Amendment claims against Defendant Angelini are not cognizable under Bivens.  Moreover, to prevail on a failure to intervene claim, the plaintiff must show: "(1) that the defendant failed to refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a 'realistic and reasonable opportunity to intervene.'"  See Knight v. Walton, No. 2:12-cv-984, 2014 WL 1316115, at *8 (W.D. Pa. Mar. 28, 2014) (quoting Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002)).  As discussed supra, Defendant Mattingly's alleged actions, while inappropriate, did not violate the Eighth Amendment.  Thus, Defendant Angelini cannot be held liable for failing to intervene when no constitutional violation took place.  The Court, therefore, will dismiss Plaintiff's claims against Defendant Angelini pursuant to 28 U.S.C. § 1915A(b)(1).

D.      **Leave to Amend**

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.  The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

As noted supra, Plaintiff has filed a motion to amend his complaint.  (Doc. No. 105.) Plaintiff seeks to amend his complaint to add specific verbiage regarding the alleged verbal sexual harassment by Defendant Mattingly.  (Id. at 1-2.)  Defendants oppose the motion on the basis that the proposed amendment is cumulative and does not cure the defects discussed above. (Doc. No. 112.)  The Court agrees.  Even if the Court were to consider the added verbiage, Plaintiff's claims are still not cognizable pursuant to Bivens.  For the reasons discussed above, the Court concludes that it would be futile to permit Plaintiff to file an amended complaint.  His motion to amend (Doc. No. 105) will, therefore, be denied.

**IV.**     **CONCLUSION**

For the foregoing reasons, the Court will grant Defendant Mattingly and Jenkins' motion to dismiss (Doc. No. 77) and deny Plaintiff's motion to amend (Doc. No. 105) and motion seeking emergency preliminary injunctive relief (Doc. No. 124).  Plaintiff will not be permitted to file an amended complaint in this matter.  An appropriate Order follows.